# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ANTHONY GRAHAM,  
    Petitioner,

Case No. 1:10-cv-616

vs.

Barrett, J.  
Litkovitz, M.J.

WARDEN, CHILLIOCOTHE  
CORRECTIONAL INSTITUTION,  
    Respondent.

**REPORT AND**  
**RECOMMENDATION**

Petitioner, who is currently incarcerated at the Chillicothe Correctional Institution in

Chillicothe, Ohio, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

with the assistance of counsel. This matter is before the Court on the petition and respondent's

return of writ with exhibits. (Docs. 1, 10). Also pending before the Court for ruling is

petitioner's motion for evidentiary hearing (Doc. 2), which is opposed by respondent. (*See* Doc.

11).

## I. PROCEDURAL HISTORY

### State Trial Proceedings

On October 15, 2007, the Warren County, Ohio, grand jury returned an indictment

charging petitioner with one count of possession of marijuana in violation of Ohio Rev. Code §

2925.11(A) and one count of trafficking in marijuana in violation of Ohio Rev. Code §

2925.03(A)(2). (Doc. 10, Ex. 1). In its direct appeal decision, the Ohio Court of Appeals,

Twelfth Appellate District, provided the following summary of the facts that led to petitioner's

indictment based on evidence introduced during the trial proceedings:[1]

> On October 9, 2007, Deputy Brian Lewis was patrolling the northbound traffic on I-71 in Turtle Creek Township. In addition to being a deputy with the Warren County Sheriff's Office, Lewis is also a trained canine handler, and at the time of Graham's trial, was assigned to the Warren County Drug Task Force. In the late afternoon of the ninth, Lewis noticed a dark-colored minivan traveling in the left-hand lane, followed by a semi-truck. Lewis clocked the van going 64 m.p.h. in a section with a maximum speed of 65 m.p.h. As the van and truck passed Lewis, the van slowed suddenly so that the semi-truck had to apply its br[ake]s to avoid a rear-end collision with the van. Lewis checked the van's speed, which had decreased to 59 m.p.h.

> After pulling onto the highway to follow, Lewis continued to watch the van, which had moved to the right lane. Lewis saw the minivan drift over the center line so that both the front and rear tires were across and into the left lane, only to drift back into the right lane. Lewis also observed the van's speed fluctuate from the mid-50's up to the mid-60's and back again. At that point, Lewis pulled the van over.

> Lewis informed Graham, the driver, that he pulled the van over because Graham committed a lane violation. At that time, Lewis requested Graham's identification. The van also contained a passenger, Winston Thomas, who told Lewis that he had rented the van. Lewis requested Thomas' identification and the rental paperwork. While Lewis was waiting for Graham and Thomas to turn over their identifications and rental paperwork, he visually scanned the van and noticed an air freshener in the back of the van, as well as various garbage bags and clothes.

> Lewis then verified that the van was rented, and discovered that Thomas had picked it up from Logan International Airport in Boston, Massachusetts at approximinately 8:00 p.m. the previous night and that Graham signed the paperwork as an additional driver. Lewis asked Thomas to step out of the van, and began a conversation with him in front of his police cruiser. Thomas told Lewis that he and Graham had driven from Boston in order to visit friends in Cincinnati. However, Thomas would not give Lewis a specific address or location where he visited his friends, instead telling Lewis that he and Graham

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

slept in the van and were headed up to Cleveland.

After hearing Thomas' version, Lewis went back to the van and asked Graham to explain why the two had come from Boston the night before. Graham also told Lewis that the two had been to Cincinnati but said that they were visiting family, but could not give a specific location or address that they had visited. Graham also told Lewis that they had gotten lost and had, at one point, ended up in Indianapolis.

Lewis called for backup assistance and ran Thomas and Graham's information through police dispatch to confirm their identifications and that neither had any outstanding warrants. By the time the information was verified, a backup arrived on the scene and Lewis felt the situation was secure enough to perform a canine sniff to detect drugs. During the search, Thomas and Graham were seated in the backup unit's cruiser. Before placing them in the cruiser, the backup officer patted Thomas and Graham down and found a McDonald's bag with over $2,000 cash in the back of Thomas' waistband. At that point, Lewis walked his canine partner around the van, and the dog alerted at the back of the van as well as the driver-side door.

Lewis opened the back door of the van, removed a blanket from the back seat area and found four individual bails wrapped in moving blankets and tape. After Lewis removed the moving blanket and cut through the tape and cellophane, he saw that the bundle was filled with a green, leafy substance he recognized as marijuana. The police then took the van to a secure garage and thoroughly searched the van, finding two more bundles of marijuana in the front of the van, with one found directly behind the driver's seat.

Soon thereafter, Detective Dan Schweitzer of the Warren County Drug Task Force and Special Agent Raymond Dratt of the Drug Enforcement Agency ("DEA") separately interviewed Thomas and Graham. Graham told Schweitzer and Dratt that he and Thomas drove from Boston to Cincinnati, slept in the van at a rest stop, and had eventually stopped at a Dunkin' Donuts in the Kenwood Mall area.

Graham said that while at Dunkin' Donuts, Thomas went outside and approached three unknown males and had a conversation with them. The men drove off in the van and brought it back a few hours later. Graham told Schweitzer and Dratt that Thomas said the men were family members. When the van reappeared, Graham said that he and Thomas immediately started northbound towards Boston. When Schweitzer asked Graham his involvement, Graham responded that he did not know about the drugs and that he was just the driver.

(Doc. 10, Ex. 17, pp. 1-4).

3

With the assistance of his trial counsel, petitioner filed a pretrial motion "to suppress any and all evidence seized as a result of the unconstitutional search and seizure of his vehicle that took place on October 9, 2007 and to suppress all statements made by Graham to police officers prior to being advised of his rights under *Miranda v. Arizona*," 384 U.S. 436 (1966). (Doc. 10, Ex. 3). On May 2, 2008, after holding a hearing, the trial court denied the suppression motion. (*See* Doc. 10, Ex. 5 & Ex. 17, p. 4).

The matter proceeded to trial before a jury, which found petitioner guilty as charged. (Doc. 10, Ex. 6). On July 14, 2008, the trial court issued a "Judgment Entry Of Sentence," merging the two offenses for purposes of sentencing and sentencing petitioner to an eight (8) year term of imprisonment for marijuana trafficking. (Doc. 10, Ex. 7).

Thereafter, petitioner's counsel filed a motion for new trial. (Doc. 10, Ex. 8). In the motion, counsel contended that the trial court erred in refusing to allow questioning of a police officer regarding "exculpatory statements made by the co-defendant, Winston Thomas, who absconded and thereby became an unavailable witness." (Doc. 10, Ex. 8). Counsel stated that it was petitioner's belief "that the police officers would have testified that Winston Thomas would say Anthony Graham had no knowledge of what was in the van." (Doc. 10, Ex. 8). On July 21, 2008, the trial court denied petitioner's new trial motion, finding "that there was no error in the proceedings which prevented the Defendant from having a fair trial; no misconduct of the jury, Prosecuting Attorney, or witnesses; no accident or surprise; no other error of law or newly discovered evidence; and . . . the verdict was sustained by sufficient evidence and is not contrary to law." (Doc. 10, Ex. 9).

4

## State Direct Appeal Proceedings

Petitioner's trial counsel filed a timely notice of appeal and amended notice of appeal on

petitioner's behalf to the Ohio Court of Appeals, Twelfth Appellate District. (Doc. 10, Exs. 10-

11). With the assistance of new counsel for appeal purposes, petitioner filed a brief, raising the

following assignments of error:

> 1. The trial court erred to the prejudice of defendant-appellant by overruling his motion to suppress and permitting the admission of evidence at trial which was obtained in violation of the Fourth Amendment to the United States Constitution and Art. I, Section 14 of the Ohio Constitution.
>
> 2. The trial court erred to the prejudice of defendant-appellant by permitting a DEA agent to give the jury his opinion that defendant-appellant was a drug courier, in violation of the State evidence rules and Graham's federal due process guarantees.
>
> 3. The trial court erred to the prejudice of defendant-appellant by denying him his right to present a defense in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.
>
> 4. The trial court erred to the prejudice of defendant-appellant by permitting the prosecution to engage in misconduct during closing argument, thereby violating his due process rights.
>
> 5. The trial court erred to the prejudice of defendant-appellant by finding him guilty of possession of marijuana and trafficking in marijuana when the evidence was insufficient to support the required culpable mental state of knowingly, thereby depriving defendant-appellant of his right to due process.
>
> 6. The trial court erred to the prejudice of defendant-appellant by finding him guilty of possession of marijuana and trafficking in marijuana when such verdicts were contrary to the manifest weight of the evidence presented at trial.
>
> 7. The trial court erred to the prejudice of defendant-appellant by giving a jury instruction on complicity.
>
> 8. The mandatory prison sentence imposed upon defendant-appellant was unconstitutional as it removed all discretion from the province of the judiciary.

9. The trial court erred to the prejudice of the defendant-appellant by admitting the laboratory report without the State presenting the testimony of the lab technician who performed the analysis in violation of defendant-appellant's right to confrontation contained in the Sixth Amendment of the United States Constitution.

10. Defendant-appellant was denied his right to effective assistance of counsel secured to him by the Sixth and Fourteenth Amendments to the Constitution of the United States.

11. The cumulative effect of the trial court's errors led to a wrongful verdict in violation of defendant's constitutional rights of due process.

(Doc. 10, Ex. 12).

On June 16, 2009, the Ohio Court of Appeals issued an Opinion and Judgment Entry

overruling petitioner's assignments of error and affirming the trial court's judgment. (Doc. 10,

Ex. 17).

Petitioner filed a *pro se* notice of appeal to the Ohio Supreme Court. (Doc. 10, Ex. 18).

In his memorandum in support of jurisdiction, petitioner asserted in nine propositions of law all

but one of the claims of error that had been presented to the Ohio Court of Appeals; he did not

include in his jurisdictional memorandum the claim of "cumulative error" alleged as the eleventh

assignment of error on direct appeal. (Doc. 10, Ex. 19). On November 18, 2009, the Ohio

Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not

involving any substantial constitutional question." (Doc. 10, Ex. 20).

### Federal Habeas Corpus

The attorney who represented petitioner on appeal to the Ohio Court of Appeals filed the

instant habeas corpus action on petitioner's behalf on September 9, 2010. (Doc. 1). Petitioner

alleges the following grounds for relief, as set forth in the "Memorandum In Support Of Petition"

filed with the petition:

6

**Ground One:** Petitioner's Fourth Amendment right to be free from unreasonable searches and seizures was violated when he was stopped, detained, and searched unlawfully; and when the trial court failed to suppress the evidence found as a result of that unlawful search and seizure.

**Ground Two:** Petitioner's federal due process rights were violated when the trial court permitted a DEA agent to testify that in his opinion petitioner was a drug courier.

**Ground Three:** Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated when the trial court prevented him from presenting a defense and confronting witnesses against him at his trial.

**Ground Four:** Petitioner was denied due process of law in violation of the Fourteenth Amendment when the prosecutor engaged in numerous instances of prosecutorial misconduct including improper comments on his post-arrest silence in violation of his Fifth Amendment rights.

**Ground Five:** Petitioner's Sixth Amendment right to confrontation was violated when the trial court admitted the forensic laboratory report without the State presenting the testimony of the lab technician who performed the analysis thereby denying him a fundamentally fair trial.

**Ground Six:** Petitioner's Fourteenth Amendment due process rights were violated when he was found guilty of possession of marijuana and trafficking of marijuana when the evidence was insufficient to support that finding.

**Ground Seven:** Petitioner is entitled to federal habeas corpous relief as he has established "actual innocence."

**Ground Eight:** The mandatory prison sentence imposed upon petitioner was unconstitutional as it removed all discretion from the province of the judiciary and violated separation of powers; constituted cruel and unusual punishment; and violated petitioner's Sixth Amendment right to a jury trial.

**Ground Nine:** Petitioner was denied his right to effective assistance of counsel secured to him by the Sixth and Fourteenth Amendments to the Constitution of the United States.

**Ground Ten:** The cumulative effect of the trial court's error led to a wrongful verdict in violation of petitioner's constitutional rights of due process.

(Doc. 1, "Memorandum In Support Of Petition," pp. 8, 28, 31, 33, 36, 38, 39, 40, 41, 42).

## II. OPINION

### A. Petitioner's Motion For Evidentiary Hearing (Doc. 2) Should Be Denied

Petititioner has filed a motion requesting an evidentiary hearing on the Fourth

Amendment claim alleged in Ground One; the Sixth Amendment Confrontation Clause claim

alleged in Ground Five stemming from the admission of a forensic laboratory report; and his

claim of "actual innocence" alleged in Ground Seven. (Doc. 2). Respondent opposes the

motion. (Doc. 11).

First, with respect to the claims alleged in Grounds One and Five, which were adjudicated

by the state courts, this Court is not permitted to consider evidence outside the state-court record

in assessing, under the applicable the standard of review set forth in 28 U.S.C. § 2254(d),

whether the state courts' rulings were contrary to or involved an unreasonable application of

clearly-established Supreme Court precedents, or were based on an unreasonable determination

of the facts. *See Cullen v. Pinholster,* 131 S.Ct. 1388, 1398 (2011); *see also Champ v. Zavaras,*

No. 10-1308, 2011 WL 2411002, at *10 (10th Cir. June 16, 2011); *Jackson v. Kelly,* __ F.3d __,

Nos. 10-1, 10-3, 2011 WL 1534571, at *12 (4th Cir. Apr. 25, 2011); *Atkins v. Clarke,* 642 F.3d

47 (1st Cir. 2011). *Cf. Barton v. Warden, Southern Ohio Corr. Facility*, No. 1:09cv353, 2011

WL 2293225, at *4-5 (S.D. Ohio June 8, 2011) (Merz, M.J.) (vacating order granting an

evidentiary hearing in a § 2254 habeas case in light of *Pinholster*).

Second, as discussed below, the Fourth Amendment claim alleged in Ground One and the

"actual innocence" claim alleged in Ground Seven are not subject to review as independent

grounds for relief in this federal habeas proceeding. Moreover, to the extent petitioner argues

that other procedurally-defaulted grounds for relief may be considered based on his claim of

actual innocence, he has not made a colorable showing of his innocence in accordance with

requirements set forth in *Schlup v. Delo*, 513 U.S. 298 (1995), to arguably justify an evidentiary

hearing on that issue in this case.

In sum, all of petitioner's claims for relief are capable of resolution based on the present

record. Therefore, petitioner's motion for evidentiary hearing (Doc. 2) should be **DENIED**.

**B. The Fourth Amendment Claim In Ground One Is Barred From Federal Habeas Review**

In Ground One of the petition, petitioner claims that he is entitled to habeas relief because

the trial court erred in refusing to suppress evidence that was seized in violation of his Fourth

Amendment rights when the police improperly stopped and detained him for a motor vehicle

traffic violation and then proceeded to conduct an "unlawful" search of the minivan. (*See* Doc.

1, "Memorandum In Support Of Petition," pp. 8-28). In the return of writ filed in response to the

petition, respondent asserts that the Supreme Court's decision in *Stone v. Powell,* 428 U.S. 465

(1976), precludes federal habeas review of petitioner's claim stemming from the denial of his

suppression motion and the state courts' adjudication of the Fourth Amendment issues raised in

that motion. (Doc. 10, Brief, pp. 13-14). Respondent's argument has merit.

As respondent has argued, the Supreme Court held in *Stone* that federal habeas courts are

prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if

the prisoner had a full and fair opportunity to litigate such a claim in the state courts and the

presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone*,

428 U.S. at 494-95. The Sixth Circuit has developed a two-step inquiry in assessing whether

*Stone* applies to preclude federal habeas review of Fourth Amendment claims. *Riley v. Gray*,

674 F.2d 522, 526 (6th Cir. 1982); *see also Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir.

2000). Under that inquiry, the federal habeas corpus court must determine (1) whether the State has provided a procedural mechanism through which, in the abstract, the petitioner could raise a Fourth Amendment claim, and (2) whether the petitioner's presentation of the Fourth Amendment claim was in fact frustrated because of a failure of that mechanism. *Id.*

In *Riley,* the Sixth Circuit held that by providing for the filing of a pretrial motion to suppress and the opportunity to directly appeal any ruling denying a suppression motion, Ohio has a mechanism in place for the resolution of Fourth Amendment claims, which "is, in the abstract, clearly adequate." *Riley,* 674 F.2d at 526; *see also Loza v. Mitchell,* 705 F. Supp.2d 773, 860 (S.D. Ohio 2010). Therefore, the determination whether *Stone* applies turns solely on the resolution of the second *Riley* inquiry. *See Hillman v. Beightler,* No. 5:09cv2538, 2010 WL 2232635, at *5 (N.D. Ohio May 26, 2010) (O'Malley, J.).

Courts have consistently held that the "relevant inquiry" in resolving the second question posed in *Riley* is whether the "habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided" by the state courts. *Wynne v. Renico,* 279 F. Supp.2d 866, 892 (E.D. Mich. 2003) (citing *Ortiz-Sandoval v. Gomez,* 81 F.3d 891, 899 (9th Cir. 1996)).[2]

> As long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of procedures that are "suitably crafted" to test for possible Fourth Amendment violations, a federal habeas court does not have the power, under *Stone,* to "second-guess the accuracy of the state courts'" resolution of those claims.". . . Thus, a "mistaken outcome" of a suppression hearing that

---

[2]The district court later supplemented its opinion in *Wynne* on another issue, which was determined to be sufficiently meritorious to justify the granting of a conditional writ of habeas corpus. *See Wynne v. Renico,* 595 F. Supp.2d 775 (E.D. Mich. 2009). Thereafter, the Sixth Circuit reversed the district court's revised judgment granting habeas corpus relief based on that other ground; the Supreme Court recently denied certiorari review of the Sixth Circuit's decision. *Wynne v. Renico,* 606 F.3d 867 (6th Cir. 2010), *cert. denied,* _ S.Ct. _, 79 U.S.L.W. 3421, 3623, 3627 (U.S. May 2, 2011) (Nos. 10-865, 10A372).

> has been conducted in a state trial court, standing alone, does not deny a habeas
> petitioner's opportunity to fully and fairly litigate his Fourth Amendment
> claims.... Thus, even "potentially meritorious Fourth Amendment claims" are
> barred by *Stone* on habeas review if the petitioner had a full and fair opportunity
> to litigate his claims in the state courts.

*Id.* (quoting *Sanna v. Dipaolo,* 265 F.3d 1, 8-9 (1st Cir. 2001), and *Deputy v. Taylor,* 19 F.3d

1485, 1491 (3rd Cir. 1994)); *see also Hillman, supra,* 2010 WL 2232635, at *5 (quoting *Cabrera*

*v. Hinsley,* 324 F.3d 527, 531-32 (7th Cir. 2003)) ("Absent a subversion of the hearing process,

we will not examine whether the judge got the decision right. . . . '[F]ull and fair' guarantees the

right to present one's case, but it does not guarantee a correct result."); *Brown v. Berghuis*, 638 F.

Supp.2d 795, 812 (E.D. Mich. 2009) (and cases cited therein) ("Under *Stone,* . . . the correctness

of the state courts' conclusions is simply irrelevant.").

 The Sixth Circuit has stated that the second *Riley* inquiry is "not meant to be a case by

case review of state court determinations," but rather "is a review of whether the state provided

an adequate mechanism to address Petitioner's Fourth Amendment claims." *Abdul-Mateen v.*

*Hofbauer,* No. 98-2323, 2000 WL 687653, at *3 (6th Cir. May 19, 2000). In *Abdul-Mateen*, the

court recognized that an exception was carved out in *Riley* for "egregious error in the application

of fourth amendment principles" amounting to a refusal by the state courts to consider or apply

controlling Supreme Court precedents. *See id.* (quoting *Riley,* 674 F.2d at 526, in turn citing

*Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir. 1978)). In *Riley,* the Sixth Circuit explained that

when an "egregious error" of such "magnitude and nature" is present, as it was in *Gamble,* "a

federal habeas court *might* be justified in concluding that an opportunity for a full and fair

hearing had not been afforded the petitioner." *Riley,* 674 F.2d at 526 (emphasis added). In a

subsequent decision, the Sixth Circuit rejected a petitioner's argument that an egregious

11

misapplication of a controlling Supreme Court precedent also could justify such a conclusion. *Gilbert v. Parke,* 763 F.2d 821, 824 (6th Cir. 1985). The court reasoned: "This court in *Riley* declined to adopt the portion of *Gamble* permitting federal review of egregious substantive errors committed by state courts on Fourth Amendment claims. . . . Since the [state] courts provided Gilbert a full and fair opportunity to litigate his Fourth Amendment claims, second-guessing the [state] Supreme Court on the merits would be inconsistent with *Stone.*" *Id.*

Here, as in *Gilbert,* the record does not reflect the magnitude or type of "egregious error" referred to in *Riley* as possibly justifying a finding that the opportunity for a full and fair hearing was thwarted. *Cf. Bergholz v. McMackin,* No. 89-3740, 1990 WL 223036, at *3 (6th Cir. Dec. 27, 1990) (per curiam) (in ruling that *Stone* foreclosed the petitioner's Fourth Amendment claim, the Sixth Circuit pointed out that "even if the state courts were in error in applying substantive law regarding 'seizures' under the Fourth Amendment, the state courts did not refuse to follow applicable precedent"). Indeed, on the contrary, it appears clear from the record that petitioner was able to fully and fairly litigate his claim of a Fourth Amendment violation in the state courts.

Petitioner was able to present his claim to the trial court by way of a suppression motion and was allowed to be heard on the motion at a hearing. (*See* Doc. 10, Ex. 3). Moreover, petitioner was able to challenge the trial court's ruling denying the suppression motion on direct appeal to the Ohio Court of Appeals and Ohio Supreme Court. (*See* Doc. 10, Exs. 12, 15-16, 19). In overruling petitioner's assignment of error, the Ohio Court of Appeals carefully considered petitioner's arguments and the applicable precedents in finding that the police officer who conducted the traffic stop and search of the minivan (1) "had the requisite suspicion or probable cause to initiate the traffic stop" after observing petitioner's "unsafe driving," and (2)

12

did not "unreasonably detain [petitioner] beyond the time necessary to conduct the investigation" before deploying his canine to sniff for drugs. (Doc. 10, Ex. 17, pp. 4-7). Although the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal that followed the state appellate court's decision, it did so apparently because it was not persuaded by petitioner's memorandum in support of jurisdiction that the claim merited further consideration. (Doc. 10, Ex. 20).

Accordingly, in sum, the undersigned concludes that the claim alleged in Ground One of the petition, challenging the denial of petitioner's motion to suppress evidence seized in violation of the Fourth Amendment, is barred from review under the Supreme Court's *Stone* decision. Federal habeas review of Ground One is prohibited because petitioner was provided a full and fair opportunity in the state courts to litigate the claim, and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Cf. Stone*, 428 U.S. at 494-95.

## C. Petitioner Is Not Entitled To Relief Based On The Claim In Ground Two Challenging The Admission Of A State Witness's Opinion Testimony As A Violation Of Due Process

In Ground Two of the petition, petitioner alleges that his due process right to a fundamentally fair trial was violated when, over defense counsel's objection, the trial court permitted testimony by State witness Raymond Dratt, a special agent with the Drug Enforcement Administration (DEA), about drug couriers and his opinion that "these guys are couriers." (*See* Doc. 1, "Memorandum In Support Of Petition," pp. 28-31).

Dratt became a DEA agent in August 1998; underwent 19 weeks of training when he was first hired by the DEA; and between 1999 and 2006, participated in numerous investigations of "large scale distributors." (*See* Doc. 10, Trial Tr. 121-23). The testimony challenged by

13

petitioner occurred during Dratt's direct examination, as reflected in the following transcribed

colloquy:

> [PROSECUTOR]:  . . . .Now, sir, based upon your experience and training as a
> DEA agent, as well as the investigations, countless investigation[s] you've
> conducted, did you attach any significance to the fact that you were told they were
> coming from Boston to Cincinnati and making the return trip, as you've
> described?
>
> A.  Based on my training and experience, the situation that I first observed was
> these guys are couriers.
>
> [DEFENSE COUNSEL]:  Your Honor, I'm going to object.  And I don't think
> there's a proper foundation and I don't think this is an appropriate question.
>
> THE COURT:  The question was okay.  I'm wondering where we're going with
> the answer.  Why don't you ask a new question?
>
> [PROSECUTOR]:  Okay. . . .  You indicated that it was consistent with a courier.
> What do you mean by that?
>
> [DEFENSE COUNSEL]:  Your Honor, objection.  This is not something he can
> testify to.  The facts are the facts.  We've got the evidence.
>
> THE COURT:  He can certainly testify as to what a courier, in his profession,
> would be described as.
>
> [DEFENSE COUNSEL]:  But he's asking for an opinion.
>
> THE COURT:  He's just asked him to define what a courier is.  I'm going to
> allow it.
>
> [PROSECUTOR]:  Can you explain to us what you mean by a "courier"?
>
> A.  A courier is an individual that is selected to perform the role of transporting
> either controlled substances or money from the source city back to the ultimate
> destination of distribution.
>
> Q.  And based upon your experience and training, and prior investigations that
> you've participated in, are these couriers likely to be the ultimate seller of the
> marijuana –
>
> A.  No, sir.

14

Q.  – or the drugs in question?

A.  No, sir.

Q.  Are they likely to be the producer?

A.  No, sir.

Q.  Again, based upon, just upon your experience and training in the investigations, are they to be compensated in any way for that?

[DEFENSE COUNSEL]:  Objection.

A.  Yes, sir.

THE COURT:  Overruled.

[PROSECUTOR]:  How would they typically be compensated in a marijuana case?

A.  Based on my training and experience, the usual compensation is approximately $100 a pound.  That's what they're paid for their efforts.  In this particular case, 313 pounds of marijuana, if they are paid $100 per pound, it's approximately $31,300 that, ultimately, Mr. Graham and Mr. Thomas were probably going to split.

[DEFENSE COUNSEL]:  Objection, Your Honor.  That is total speculation.  Move that it be stricken.

THE COURT:  The objection is sustained.  It will be stricken.

[PROSECUTOR]:  Without regard to Mr. Thomas and Mr. Graham, is it your experience that these couriers receive that money up front or after the completion of their mission?

[DEFENSE COUNSEL]:  Objection, Your Honor.  This is all speculation and there's no evidence against my client.

THE COURT:  Overruled.

A.  Couriers are typically given a small amount of money to cover their expenses during the trip.  And then when the product is ultimately delivered, that's when they're compensated for their time and effort.

Q. All right. Now, also, based upon your experience, your training and your prior investigations, was there any significance attached to the fact that this occurred on Interstate Highway 71, between Cincinnati and Columbus?

***

A. Yes.

Q. Okay. What significance did you attach to it?

A. It was a west-to-east trip. Typically, the marijuana is produced in the western part of the United States or it's brought in from the west and migrates to the ultimate destination of distribution. In this case, Boston.

Q. And what function does I-71 serve in that?

A. It's a major thoroughfare for drug couriers.

Q. What the military might refer to as a main supply route, MSR?

A. Yes.

(Doc. 10, Trial Tr. 125-30).

On direct appeal to the Ohio Court of Appeals, petitioner contended that Dratt's testimony amounted to reversible error because (1) it "was not relevant pursuant to Evid. R. 401, 402;" (2) its "probative value was substantially outweighed by the danger of unfair prejudice . . . [under] Evid. R. 403(A);" (3) the "testimony constituted impermissible character evidence [under] Evid. R. 404(A);" (4) the testimony, "if permissible at all, could have only been presented by an expert witness [under] Evid. R. 701, 702;" and (5) "evidence of a typical 'drug courier profile' is not admissible as substantive evidence of guilt." (*See* Doc. 10, Ex. 12, pp. 10-12). The intermediate appellate court was the only state court to issue a reasoned decision addressing the claim. Citing state case-law and evidentiary standards, the court overruled the assignment of error, reasoning in relevant part as follows:

16

A court's ruling on evidentiary issues will not be reversed unless the court has clearly abused its discretion "and the defendant has been materially prejudiced thereby.". . . More than mere error of judgment, an abuse of discretion requires that the court's attitude was unreasonable, arbitrary or unconscionable. . . .

\*\*\*

Because Dratt was not presented as an expert witness, Evid. R. 701 applies, and states, "if the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

Dratt answered the state's courier-related questions based on his education, training and experience as a DEA agent. He also used his own personal, first-hand knowledge gained by interviewing Graham and Thomas after the traffic stop so that his testimony was rationally based on his own perception. This testimony was also helpful to the jury because it explained DEA jargon used during Dratt's testimony that the average citizen may not be familiar with, and further allowed the jury to determine whether Graham possessed or trafficked the marijuana as charged in the indictment.

We also note that Ohio courts rely on such testimony when dealing with drug-related cases. Through an officer or agent's testimony, juries, trial judges, and reviewing courts are able to consider the evidence from well-trained and reliable sources familiar with drugs and drug-related activity. . . .

Therefore, the trial court's decision to allow Agent Dratt to testify about drug couriers was not an abuse of discretion. . . .

(Doc. 10, Ex. 17, pp. 8-9) (state case citations omitted).

Generally, in cases involving a claim that was adjudicated on the merits by the state

courts, the standard of review to apply is set forth in 28 U.S.C. § 2254(d). Under that provision,

a writ of habeas corpus may not issue unless the state courts' adjudication of the claim either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

17

28 U.S.C. § 2254(d).  The provision applies even in cases where the state courts summarily reject

a claim or issue a ruling "unaccompanied by an opinion explaining the reasons relief has been

denied." *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

A legal principle is "clearly established" for purposes of habeas corpus review under §

2254(d)(1) "only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes,* __

U.S. __, 130 S.Ct. 1171, 1173 (2010).  "[A] federal habeas court reviewing the state-court

judgment must apply the law that controlled 'at the time his state-court conviction became

final.'" *Miller v. Stovall,* 608 F.3d 913, 919 (6th Cir. 2010) (quoting *Williams v. Taylor,* 529

U.S. 362, 390 (2000)), *petition for cert. filed,* 79 U.S.L.W. 3404 (U.S. Dec. 21, 2010) (No. 10-

851).

In addition, the "contrary to" and "unreasonable application" clauses set forth in 28

U.S.C. § 2254(d)(1) have independent meanings:

> A federal habeas court may issue the writ under the "contrary to" clause if the
> state court applies a rule different from the governing law set forth in [Supreme
> Court] cases, or if it decides a case differently than [the Supreme Court has] done
> on a set of materially indistinguishable facts. . . .  The court may grant relief under
> the "unreasonable application" clause if the state court correctly identifies the
> governing legal principle from [the Supreme Court's] decisions but unreasonably
> applies it to the facts of a particular case. . . .  The focus on the latter inquiry is on
> whether the state court's application of clearly established federal law is
> objectively unreasonable, and . . . an unreasonable application is different from an
> incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete

bar on federal court relitigation of claims already rejected in state proceedings" and "preserves

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree

that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct.

at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner

must show that the state court ruling on the claim presented "was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Id.* at 786-87. Moreover, under the "unreasonable application clause"

inquiry, the writ may issue only if the application is objectively unreasonable "in light of the

holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant

state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529

U.S. at 412).

In the instant case, the Court is precluded from considering petitioner's claim to the

extent petitioner contends that the trial court abused its discretion under Ohio's evidentiary rules

and case-law interpreting those rules when it overruled defense counsel's objections and

permitted Dratt to testify about drug couriers and to state his opinion, based on his "training and

experience," that "these guys are couriers." The federal habeas court has jurisdiction to review a

state prisoner's habeas petition only on the ground that the challenged confinement violates the

Constitution, laws or treaties of the United States. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,*

465 U.S. 37, 41 (1984); *see also Wilson v. Corcoran,* __ U.S. __, 131 S.Ct. 13, 16 (2010) (quoting

*Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to

reexamine state-court determinations on state-law questions"). "Habeas review does not

encompass state court[] rulings on the admission of evidence unless there is a constitutional

violation." *Clark v. O'Dea,* 257 F.3d 498, 502 (6th Cir. 2001) (quoting *Clemmons v. Sowders,*

34 F.3d 352, 357 (6th Cir. 1994)). Therefore, to the extent petitioner's arguments for relief are

based solely on a violation of Ohio's evidentiary rules or other error under Ohio law, he does not

present a cognizable federal constitutional claim subject to review in this proceeding. *See, e.g., Pudelski v. Wilson,* 576 F.3d 595, 612 (6th Cir. 2009) (holding that to the extent the petitioner alleged the trial court violated Ohio R. Evid. 703 in admitting a coroner's expert testimony, his claim involved "an issue of state law that is not subject to habeas review"), *cert. denied*, 130 S.Ct. 3274 (2010); *Bey v. Bagley,* 500 F.3d 514, 519 (6th Cir. 2007) (and Sixth Circuit cases cited therein) ("a claim that the state trial court erred in the application of state law, specifically a ruling on evidence, . . . standing alone, . . . is simply not cognizable on habeas review'); *see also Hall v. Vasbinder,* 563 F.3d 222, 239 (6th Cir. 2009) (same).

This Court does have jurisdiction to consider petitioner's claim to the extent he alleges that the trial court's evidentiary ruling deprived him of his due process right to a fundamentally fair trial. *See Sandoval v. Toledo Corr. Inst.,* 409 F. App'x 847, 850 (6th Cir. 2010) (citing *Wynne v. Renico,* 606 F.3d 867, 871 (6th Cir. 2010), *cert. denied,* _ S.Ct. _, 79 U.S. L.W. 3421, 3623, 3627 (U.S. May 2, 2011) (Nos. 10-856, 10A372)), *cert. denied,* _ S.Ct. _, 79 U.S.L.W. 3628 (U.S. May 2, 2011) (No. 10-9701); *see also Bey,* 500 F.3d at 519-20 (holding that petitioner had asserted a cognizable habeas claim to the extent he alleged that "the admission of 'other acts' evidence [upheld by the Ohio Supreme Court] as a matter of state evidentiary law . . . rendered his entire trial fundamentally unfair").

In this case, as in *Bey*, the Ohio appellate courts upheld the trial court's evidentiary ruling as a matter of state law. As the Sixth Circuit noted in *Bey,* the Ohio courts' decision that admission of the challenged "evidence was proper–combined with our ordinary inability to reconsider a state court's state-law-based decisions–would appear to defeat [petitioner's] claim." *See Bey,* 500 F.3d at 520. In *Bey*, the Sixth Circuit stated that only "two possibilities" were open

20

to petitioner for prevailing on the argument that "regardless of its compliance with state law, the state action may nonetheless violate due process, and thus be contrary to Supreme Court precedent"– either (1) "the state law (rule) itself contradicts Supreme Court precedent," or (2) "the state's application of the law (rule) under the particular circumstances does." *Id.* at 521.

Here, as in *Bey*, petitioner does not challenge the constitutionality of the state evidentiary rules or standards relied on by the Ohio Court of Appeals in upholding the trial court's decision to allow Dratt's testimony regarding drug couriers. Instead, his argument is that, despite the Ohio appellate courts' finding of compliance with state law, "the evidence admitted in this case was so *unfairly prejudicial* that it offends [a] principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, . . . i.e., the fundamental right to a fair trial." *Cf. id.* at 521 (internal citation and quotation omitted) (emphasis in original).

It is well-settled under Supreme Court precedents that "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Dowling v. United States,* 493 U.S. 342, 352 (1990). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.; see also Sanborn v. Parker,* 629 F.3d 554, 576 (6th Cir. 2010); *Bey,* 500 F.3d at 522-23; *Sandoval,* 409 F. App'x at 850. As the Court in *Dowling* observed:

> Judges are not free, in defining "due process" to impose on law enforcement officials [their] "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." . . . [They] are to determine only whether the action complained of . . . violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," . . . and which define "the comunity's sense of fair play and decency."

*Dowling,* 493 U.S. at 353 (quoting *United States v. Lovasco,* 431 U.S 783, 790 (1977), in turn quoting *Rochin v. California*, 342 U.S. 165, 170, 173 (1952); *Mooney v. Holohan*, 294 U.S. 103,

112 (1935)).

The inquiry in determining "[w]hether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in a sense of a crucial, critical highly significant factor." *Brown v. O'Dea,* 227 F.3d 642, 645 (6th Cir. 2000) (quoting *Leverett v. Spears,* 877 F.2d 921, 925 (11th Cir. 1989) (internal citations and quotations omitted)); *see also Hudson v. Lafler,* No. 08-2067, 2011 WL 1682893, at *9 (6th Cir. May 5, 2011). The Supreme Court has also suggested that due process concerns may be triggered in cases where erroneously admitted evidence "is almost entirely unreliable and . . . the factfinder and the adversary system [would] not be competent to uncover, recognize, and take due account of its shortcomings." *See Barefoot v. Estelle,* 463 U.S. 880, 899 (1983); *Whitley v. Wolfenbarger,* No. 2:08-cv-14172, 2010 WL 6184870, at *5 (E.D. Mich. Aug. 12, 2010) (Report & Recommendation), *adopted,* 2011 WL 927013 (E.D. Mich. Mar. 16, 2011).

To obtain relief based on a claim challenging the admission of evidence at a state criminal trial, the federal habeas petitioner must satisfy "stringent" standards. *Loza v. Mitchell,* 705 F.Supp.2d 773, 885 (S.D. Ohio 2010); *see also Hudson, supra,* 2011 WL 1682893, at *9 (citing *Schoenberger v. Russell,* 290 F.3d 831, 836 (6th Cir. 2002)) ("Erroneously admitting evidence under state evidence rules amounts to a due process violation in a federal habeas proceeding only in extraordinary cases."). The petitioner must establish both (1) that the challenged evidentiary ruling "violated a bedrock principle of justice sufficient to deprive [him] of a fundamentally fair trial" under the Fourteenth Amendment's Due Process Clause; and (2) that "the state courts' decision finding no error in the state court evidentiary ruling contravened or unreasonably applied clearly established Supreme Court precedent" under the standard of review set forth in 28

U.S.C. § 2254(d). *Loza,* 705 F.Supp.2d at 885; *cf. Schoenberger*, 290 F.3d at 836 (rejecting claim challenging the admission of evidence pertaining to the petitioner's prior "bad acts" given "the stringent standards of AEDPA and our general reluctance to second-guess state court evidentiary rulings in a habeas proceeding").

Moreover, even assuming error of constitutional dimension occurred, federal habeas relief may not be granted unless the error "had a substantial and injurious effect or influence in determining the jury's verdict." *See Calderon v. Coleman,* 525 U.S. 141, 145 (1998) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)); *see also Ford v. Curtis,* 277 F.3d 806, 809-11 (6th Cir. 2002) (involving claims challenging the admission of hearsay and "bad acts" evidence); *Peterson v. Warren,* 311 F. App'x 798, 804 (6th Cir. 2009) (involving evidence admitted in violation of the Confrontation Clause). In determining the effect of the error under *Brecht*, the federal habeas court must "consider both the impact of the improperly admitted evidence and the overall weight of the evidence presented at trial." *Peterson,* 311 F. App'x at 805.

Here, petitioner has not presented any Supreme Court or other relevant federal authority supporting his position that the DEA agent's testimony was constitutionally impermissible;[3] nor has he demonstrated that the circumstances of his case fall within the narrow category of

---

[3]Petitioner has cited only one federal case as support for the general contention that "evidence of a typical 'drug courier profile' is not admissible as substantive evidence of guilt." (*See* Doc. 1, "Memorandum In Support Of Petition," p. 30; Doc. 10, Ex. 12, p. 11). In that case, *Reid v. Georgia*, 448 U.S. 438, 440-41 (1980) (per curiam), the Supreme Court held that evidence seized during an investigatory stop and search of the defendant was obtained in violation of the Fourth Amendment and, therefore, should have been suppressed because the DEA agent who detained the defendant "could not as a matter of law, have reasonably suspected the petitioner of criminal activity" based solely on the fact that the "petitioner appeared to the agent to fit the so-called 'drug courier profile.'" *Reid*, which involved a Fourth Amendment search and seizure matter, is inapposite in resolving the fair trial issue raised in this case. Contrary to petitioner's contention, *Reid* does not hold that evidence of "typical" drug courier activity may not be introduced as relevant evidence in a criminal trial involving drug trafficking and possession charges; nor does the case even remotely suggest that the admission of such evidence is proscribed by the Due Process Clause because it violates a fundamental principle of justice and fair play.

23

infractions that trigger due process concerns. The Ohio Court of Appeals reasonably determined that the challenged drug-courier testimony was admissible as lay opinion testimony under Ohio R. Evid. 701. First, as the state appellate court found, Dratt was an experienced, "well-trained and reliable source[] familiar with drugs and drug-related activity," whose opinion also was "rationally based on his own perception" given that he participated in the investigation and interviews of both petitioner and Thomas after the traffic stop. Second, as the Ohio Court of Appeals pointed out, the challenged testimony was relevant not only for the purpose of explaining "DEA jargon" to the jury, but also for establishing that petitioner, as driver of the rental minivan, possessed or trafficked the marijuana found during the search of the van.

The challenged testimony was reliable given Dratt's training and experience as a DEA agent; moreover, the testimony did not involve a "crucial, critical highly significant factor" in determining petitioner's guilt or innocence on the criminal charges. *Cf. Barefoot,* 463 U.S. at 899; *Brown,* 227 F.3d at 645. As in *Bey,* petitioner has offered nothing more than his disagreement with the Ohio appellate courts' conclusion that there was no abuse its discretion under Ohio's rules of evidence in permitting the DEA agent's testimony; petitioner's "personal disagreement is not cognizable on federal habeas review, as it involves no constitutional dimension." *Cf. Bey,* 500 F.3d at 523. In any event, the undersigned is convinced that any error in allowing the testimony did not have a substantial and injurious effect or influence on the jury given the overall weight of the evidence presented at trial regarding petitioner's and Thomas's activities leading up to the traffic stop and the large quantity of marijuana, packaged for distribution, that was found during the search of their rental van. *Cf. Peterson,* 311 F. App'x at 805.

Accordingly, in sum, the undersigned concludes that to the extent petitioner seeks relief

24

solely on the basis of a violation of Ohio's evidentiary rules or other error under Ohio law, he does not present a cognizable federal constitutional claim subject to review in this proceeding. To the extent petitioner claims that he was denied a fair trial as a result of the state evidentiary ruling, the Ohio appellate courts' determination that no reversible error occurred is neither contrary to nor involves an unreasonable application of clearly-established federal law as determined by the Supreme Court. Because the trial court's alleged error under Ohio law did not deprive petitioner of a fundamentally fair trial, the Court is bound by the state courts' adjudication of the state-law issue. *Cf. Arrambide v. Hudson*, No. 1:08cv0065, 2010 WL 3463501, at \*8 (N.D. Ohio July 23, 2010) (Report & Recommendation), *adopted*, 2010 WL 3463496 (N.D. Ohio Aug. 31, 2010). In any event, given the overall overwhelming evidence of guilt that was presented in this case, petitioner has not demonstrated that any error in allowing the DEA agent's drug-courier testimony had a substantial and injurious effect or influence on the jury verdicts.

**D. Ground Three Should Be Denied As Lacking A Factual Basis Or Record Support**

In Ground Three of the petition, petitioner claims that the trial court deprived him of his constitutional right to present a defense and confront witnesses against him when it prevented him from questioning a State witness "about a highly exculpatory statement made by co-defendant Thomas." (Doc. 1, "Memorandum In Support Of Petition," p. 32). The violation allegedly occurred during defense counsel's cross-examination of Detective Dan Schweitzer of the Warren County Drug Task Force, who participated in the interviews of petitioner and Thomas immediately following their arrests. Specifically, petitioner cites the following colloquy during Schweitzer's cross-examination as the factual basis for his claim of constitutional error:

Q. Were you present when Mr. Thomas said Anthony didn't have anything to do

**25**

with this and didn't know what was going on?

A. No.

[PROSECUTOR]: Objection.

Q. You were not present?

THE COURT: The objection is sustained.

[PROSECUTOR]: Move to strike.

[DEFENSE COUNSEL]: Why?

THE COURT: The jury will disregard. It's hearsay.

(Doc. 10, Trial Tr. 114-15).

On direct appeal, the Ohio Court of Appeals rejected petitioner's claim of error, reasoning

in relevant part as follows:

> Graham essentially argues that he was denied his right to present the exculpatory
> statement because the court ruled that it was hearsay. However, there is no need to
> perform a hearsay analysis because before the court sustained the state's objection,
> Schweitzer answered that he had not been present. Because Schweitzer was not
> present when the statement was supposedly made, he could not testify on the matter.
> Neither arguments made at trial nor Graham's assertions to this court demonstrate
> that the trial court should have permitted Graham to continue to question witnesses
> about Thomas' supposed statement.

> Graham failed to offer any proof that Thomas made the exculpatory statement or
> that Schweitzer was there to hear it. Instead, Graham's counsel later cross-
> examined Agent Dratt and asked him "were you present and did you hear any
> conversation or any statement made by Mr. Thomas about his involvement, or Mr.
> Graham's involvement in this transaction? * * * I'm not asking you what he said.
> Do you remember him saying anything about Mr. Graham's involvement or his
> involvement in this?" Dratt answered: "I do not, sir."

> Soon after that exchange, Graham's counsel renewed his argument regarding the
> exculpatory statement and why it should be admitted. However, instead of
> establishing the veracity of the statement or that Thomas actually made it, counsel
> told the trial court, "I believe certainly Detective Schweitzer could have testified as
> to what Thomas said." However, Schweitzer testified specifically that he was not

26

present when the statement was supposedly made and Dratt testified that he did not remember Thomas saying anything about Graham's involvement. Therefore, the trial court did not abuse its discretion by not permitting testimony regarding the supposed statement.

(Doc. 10, Ex. 17, pp. 10-11).

The undersigned has reviewed the trial transcript and agrees with the state appellate court's findings and ruling. Petitioner has presented no evidence either in the state court proceedings or in the instant action even remotely indicating that Thomas made a statement exculpating petitioner. Schweitzer and Dratt were the two law enforcement officials who conducted the interviews following petitioner's and Thomas's arrests and arguably would have heard the statement that Thomas supposedly made. In his post-conviction motion for new trial, petitioner merely argued, without providing any supporting evidence, that it was his "belief that the police officers, if allowed to testify, would have testified that Winston Thomas would say Anthony Graham had no knowledge of what was in the van." (Doc. 10, Ex. 8). However, that argument has been refuted by the police officers themselves, as Schweitzer testified at trial that he was not present to hear the statement Thomas purportedly made, and Dratt testified that he could not recall Thomas's "saying anything about Mr. Graham's involvement in this." (Doc. 10, Trial Tr. 114, 135).

Because there is simply no evidence in the record that Thomas made the exculpatory hearsay statement as petitioner has alleged, and because neither Schweitzer nor Dratt could recall Thomas's making such a statement in their presence, petitioner is unable to prevail on his claim that the trial court's ruling striking the hearsay statement and preventing further questioning regarding that statement was improper. Most certainly, given the lack of record support for his claim, petitioner is unable to demonstrate that the trial court's ruling rose to the level of a violation of his constitutional rights to present a defense and to confront the witnesses against him.

27

Therefore, petitioner is not entitled to relief based on the claim alleged in Ground Three.

**E. Petitioner Is Not Entitled To Relief Based On The Defaulted Prosecutorial Misconduct and Confrontation Clause Claims Alleged In Grounds Four And Five, Or On The Actual Innocence And Ineffective Assistance Of Counsel Claims Asserted In Grounds Seven And Nine As Independent Grounds For Relief And To Excuse His Procedural Defaults At Trial**

In Ground Four of the petition, petitioner alleges that the prosecutor engaged in numerous instances of misconduct during closing argument, which deprived petitioner of his due process right to a fair trial. (Doc. 1, "Memorandum In Support Of Petition," pp. 33-36). In Ground Five, petitioner claims that his Sixth Amendment right to confront the witnesses against him was violated when the forensic laboratory report relating "to the analysis and weight of the recovered marijuana was admitted into evidence without the testimony of the person who performed the analysis." (Doc. 1, "Memorandum In Support Of Petition," pp. 36-38). Respondent contends in the return of writ that petitioner procedurally defaulted and has waived the two grounds for relief because petitioner did not lodge a contemporaneous objection at trial to the prosecutor's closing remarks or to the admission of the lab report, and the state appellate courts relied on that state procedural bar to review in overruling the claims that were raised for the first time on appeal. (Doc. 10, Brief, pp. 20, 39).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the

28

state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v.*

*Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990);

*Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present

his constitutional claims through the requisite levels of state appellate review to the state's highest

court or commits some other procedural default that prevents a merit-based review of the federal

claims by the state's highest court, he may have waived the claims for purposes of federal habeas

review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee*

*v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th

Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be

barred from considering an issue of federal law from a judgment of a state court if the judgment

rests on a state-law ground that is both "independent" of the merits of the federal claim and an

"adequate" basis for the state court's decision. *See Harris v. Reed,* 489 U.S. 255, 260-62 (1989).

The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default, and actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claims will result in a fundamental
> miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner

fails to comply with a state procedural rule that required him to have done something to preserve

the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v.*

*Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

**29**

(1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).[4] In cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed

---

[4]In *Harris,* the Supreme Court noted that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris,* 489 U.S. at 263 n.9.

state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991);

*Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th

Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975

F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir.

2009).  To be considered regularly followed, a procedural rule need not be applied in every

relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6

(1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

 Finally, the state court's adequate and independent finding of procedural default will

preclude habeas corpus review of the petitioner's federal claims unless the petitioner can show

"cause" for the default and "prejudice" as a result of the alleged violations of federal law, or that

failure to consider the federal claims will result in a "fundamental miscarriage of justice."

*Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485

(1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

 In this case, as respondent has argued, petitioner committed a procedural default by failing

to lodge contemporaneous objections to the prosecutor's comments during closing argument and to

the admission of the lab report without the testimony of the analyst who prepared the report.

Ohio's contemporaneous objection rule is a firmly-established, adequate and independent state

procedural rule, which serves to foreclose federal habeas review when relied on by the state courts

as a ground for denying relief. *See, e.g., Goodwin v. Johnson,* 632 F.3d 301, 315 (6th Cir. 2011)

(citing *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001)); *White v. Mitchell,* 431 F.3d 517, 525

(6th Cir. 2005); *see also State v. Murphy*, 747 N.E.2d 765, 788 (Ohio 2001) (noting that Ohio's

"waiver rule," which "requires that a party make a contemporaneous objection to alleged trial error

in order to preserve that error for appellate review," is "of long standing" and "goes to the heart of

the adversary system of justice"). The Sixth Circuit has repeatedly held that "plain error" review

by the state appellate court "constitutes enforcement of Ohio's contemporaneous objection rule."

*See Williams v. Bagley,* 380 F.3d 932, 968-69 (6th Cir. 2004) (and Sixth Circuit cases cited

therein); *see also Goodwin*, 632 F.3d at 315.

      The Ohio Court of Appeals clearly and expressly enforced the state procedural bar to

review in overruling the assignments of error on direct appeal.   The court found that "by not

objecting to the admittance of the lab report or not demanding that the lab analyst appear at trial,

Graham waived [his confrontation] right and cannot now argue that the trial court erred in

accepting the lab report as evidence."   (Doc. 10, Ex. 17, p. 19).   In addition, the court held that by

failing "to raise any objections at trial to the state's closing argument," petitioner "forfeited" his

prosecutorial misconduct claim, which was reviewed only for "plain error."   (Doc. 10, Ex. 17, p.

12).   The Ohio Supreme Court's later unexplained entry denying petitioner leave to appeal and

summarily dismissing the appeal "as not involving any substantial constitutional question" must be

presumed to rely on the same state procedural grounds.   *See Taqwiim v. Johnson,* No. 99-3425,

2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517

n.8 (6th Cir. 1993), and *Ylst,* 501 U.S. at 803-04).

      Therefore, the claims alleged in Grounds Four and Five of the petition are barred from

review in this proceeding unless petitioner can demonstrate cause for and prejudice from his

procedural defaults or that a fundamental miscarriage of justice will occur if the claims are not

considered on the merits by this Court.   *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at

262; *Murray,* 477 U.S. at 485.

Petitioner has not demonstrated that failure to consider the claims will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). Petitioner has alleged in Ground Seven that he is actually innocent of the drug possession and trafficking offenses. (Doc. 1, "Memorandum In Support Of Jurisdiction," pp. 39-40). In support of that claim, he cites only to his argument in Ground Six that the evidence introduced at trial was insufficient to support a finding that he "'knowingly' was involved in the transportation of . . . marijuana." (*See* Doc. 1, "Memorandum In Support Of Jurisdiction," pp. 38-40).

In this non-capital habeas case, the Court is precluded from considering the freestanding claim of actual innocence alleged in Ground Seven. *See, e.g., Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007) (citing *Schlup,* 513 U.S. at 314-17; *Herrera v. Collins,* 506 U.S. 390, 400, 404 (1993); *Zuern v. Tate,* 336 F.3d 478, 482 (6th Cir. 2003)); *Sitto v. Lafler,* 279 F. App'x 381, 382 (6th Cir. 2008); *Wright v. Stegall,* 247 F. App'x 709, 711-12 (6th Cir. 2007).[5] However, the claim may be considered to the extent petitioner contends that it provides "a gateway" for review of his other procedurally-defaulted grounds for relief. *See House v. Bell,* 547 U.S. 518, 536-37 (2006); *Schlup,* 513 U.S. at 313-17.

Here, petitioner's actual innocence argument, which is based solely on the record evidence, fails to give rise to a colorable claim of actual innocence. Such a claim requires a showing of factual innocence, not mere legal insufficiency. *See House,* 547 U.S. at 538; *Carter v. Mitchell,*

---

[5]It is noted that the Supreme Court has yet to address the question left open in in *Herrera*, 506 U.S. at 417, as to whether "*in a capital case* a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of the defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim") (emphasis added). *See House v. Bell*, 547 U.S. 518, 554-55 (2006).

443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States,* 523 U.S. 614, 623 (1998));

*Wright v. Lazaroff*, 643 F.Supp.2d 971, 989 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.); *see also*

*Vanwinkle v. United States,* __ F.3d __, No. 09-3462, 2011 WL 1775676, at *3 (6th Cir. May 11,

2011). In order to overcome a procedural bar to habeas review based on a claim of actual

innocence, the petitioner "must show that it is more likely than not that no reasonable juror would

have found [him] guilty beyond a reasonable doubt" based on *"new reliable evidence . . . that was*

*not presented at trial."* *Schlup,* 513 U.S. at 324, 327 (emphasis added). The exception is "rare"

and is to be applied only in the "extraordinary case" where the "new facts raise[] sufficient doubt

about [the petitioner's] guilt to undermine the confidence in the result of the trial." *Id.* at 317, 321;

*see also House*, 547 U.S. at 538. Petitioner has made no such showing in this case.

      Petitioner also has alleged in Ground Nine that "he was deprived of the effective assistance

of counsel because his trial counsel failed to object to the State's admission of the lab report

without the analyst appearing at trial; fail[ed] to object to the objectionable portions of the State's

closing argument; and fail[ed] to adequately preserve his appellate rights." (Doc. 1,

"Memorandum In Support Of Petition," p. 42). The ineffective assistance of counsel may

constitute cause for a procedural default. *See, e.g., Murray,* 477 U.S. at 488; *Goodwin,* 632 F.3d at

315-16. Here, petitioner fairly presented his ineffective assistance of counsel claim to the Ohio

Court of Appeals and Ohio Supreme Court on direct review. (*See* Doc. 10, Ex. 12, p. 29; Ex. 19,

p. 9). The claim, therefore, is subject to review herein both as an independent ground for relief and

for the purpose of determining whether petitioner's procedural default of the claims raised in

Grounds Four and Five may be excused.

      In the instant case, the Ohio Court of Appeals, which was the only state court to issue a

reasoned decision addressing the merits of petitioner's ineffective assistance of counsel claim,

correctly identified and reasonably applied the clearly-established, two-part standard of review

enunciated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). (*See* Doc. 10,

Ex. 17, p. 19). As the state appellate court recognized, to establish a *Strickland* violation,

petitioner must demonstrate that (1) his trial attorney made such serious errors he was not

functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's deficient

performance prejudiced the defense. *See Strickland,* 466 U.S. at 687.

Under the first prong of the *Strickland* test, it must be shown that counsel's representation

fell below an objective standard of reasonableness based on all the circumstances surrounding the

case. *Id.* at 688. In determining whether or not counsel's performance was deficient, the Court

must indulge a strong presumption that the challenged conduct fell within the wide range of

reasonable professional assistance. *Id.* at 689. To satisfy the second "prejudice" prong of the

*Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for his

counsel's errors, the result of the trial would have been different. *See Strickland,* 466 U.S. at 694.

Petitioner has met his burden if he shows that the trial outcome would "reasonably likely have been

different absent the errors." *Id.* at 695. The Court need not examine the question of whether

counsel's performance was deficient before addressing the question of whether petitioner was

prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of

counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id.* at

697.

Here, petitioner has alleged two claims of error that his attorney should have brought to the

trial court's attention. As discussed below, petitioner has not demonstrated that his counsel was

ineffective in failing to take action at trial to preserve either of those claims for state appellate review.

## 1. Prosecutorial Misconduct.

In both the state appeal proceedings and the instant action, petitioner has challenged his trial counsel's failure to object to the prosecutor's remarks during closing argument suggesting that there was a financial "motive" for petitioner's involvement in the drug possession and trafficking offenses. (Doc. 1, "Memorandum In Support Of Petition," p. 36; Doc. 10, Ex. 12, p. 15; Ex. 19, p. 7; Trial Tr. 207). Petitioner also argues that his counsel should have objected to the following two statements made by the prosecutor during closing argument, which petitioner contends were not based on evidence presented at trial and constituted an improper comment on petitioner's pretrial silence, as well as an expression of the prosecutor's personal opinion about petitioner's credibility as a witness:

> Well, ladies and gentlemen, he's going to be asked: Why were you coming down here? He's got to have a good explanation. And the chef explanation, I guess, was the best we could come up with. It's the first time he's told that to anybody, and it suggests that it's a recent fabrication.
>
> And I suggest to you improbability, lies and exaggeration, and weirdness, as I said earlier. The story is so unbelievable that he has to embellish it to come up with some attempt to explain the conduct.

(Doc. 10, Trial Tr. 213, 226; *see also* Doc. 1, "Memorandum In Support Of Petition," p. 35; Doc. 10, Ex. 12, pp. 14-15; Ex. 19, p. 7).

Under standards clearly established by the Supreme Court, prosecutorial misconduct constitutes reversible error if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)). "The touchstone of due process analysis in

36

such a case is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982). Therefore, even if the challenged conduct was "undesirable or even universally condemned," relief may not be granted unless such conduct deprived the defendant of a fundamentally fair trial. *Darden,* 477 U.S. at 181. The alleged misconduct must be examined within the context of the entire trial to determine whether it deprived the defendant of a fair trial. *United States v. Young,* 470 U.S. 1, 11-12 (1985).

Factors to be considered in weighing whether a prosecutor's misconduct amounts to a due process violation are: (1) the degree to which the misconduct has a tendency to mislead the jury and to prejudice the accused, *see Darden,* 477 U.S. at 182, and *Young,* 470 U.S. at 12; (2) whether the misconduct is isolated or extensive, *see Donnelly,* 416 U.S. at 646; (3) whether the misconduct is deliberate, *see id.* at 647; (4) whether the prosecutor manipulated or misstated the evidence, *see Darden,* 477 U.S. at 182, and *Berger v. United States,* 295 U.S. 78, 84-85 (1935); (5) the strength of the competent proof to establish the guilt of the accused, *see Darden,* 477 U.S. at 182; (6) whether the misconduct was objected to by defense counsel, *see id.* at 182-83 & n.14, and *Young,* 470 U.S. at 13; and (7) whether a curative instruction was given by the trial judge, *see Darden,* 477 U.S. at 182. *See also Gillard v. Mitchell,* 445 F.3d 883, 897 (6th Cir. 2006) (citing *Bowling v. Parker,* 344 F.3d 487, 512-13 (6th Cir. 2003)).

In the instant case, the Ohio Court of Appeals considered the underlying prosecutorial misconduct claim raised by petitioner in assessing whether "plain error" had occurred. In accordance with the applicable Supreme Court precedents, the court reviewed the prosecutor's challenged comments "in the context of the entire trial" for the purpose of determining whether the alleged misconduct denied petitioner a fair trial. (*See* Doc. 10, Ex. 17, p. 11). After considering

petitioner's arguments, the court held that "the state's closing argument did not constitute prosecutorial misconduct and that no plain error occurred." (Doc. 10, Ex. 17, p. 14). Because it concluded that the prosecutor's challenged statements "were not improperly made and did not amount to prosecutorial misconduct," the state appellate court also ruled that petitioner's trial counsel "was not deficient" under the first prong of the *Strickland* test in failing to object to the prosecutor's closing argument. (Doc. 10, Ex. 17, p. 20). Under the applicable standard of review set forth in 28 U.S.C. § 2254(d), *see supra* pp. 17-19, the undersigned finds that the state appellate court's adjudication of the issues is neither contrary to nor involves an unreasonable application of *Strickland* or the Supreme Court precedents governing prosecutorial misconduct claims.

As background, Detective Brian Lewis testified at trial that when he spoke to petitioner after stopping the minivan, but prior to petitioner's arrest, petitioner said that he and Thomas had rented the van "the night before . . . to head down to Cincinnati . . . to visit family." (Doc. 10, Trial Tr. 50). Lewis stated: "He could never give me a specific address. Every time I would try to narrow it down, he could never be specific about where he was going." (Doc. 10, Trial Tr. 50). Later, Detective Dan Schweitzer testified that before interviewing petitioner at the police station following petitioner's arrest, he advised petitioner of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and that petitioner responded by expressing a willingness to talk without an attorney present. (Doc. 10, Trial Tr. 109). Petitioner stated in the interview that he and Thomas had traveled to Cincinnati from Boston the previous day, stopping at a rest stop to sleep, and that they drove to a Dunkin' Donuts, where Thomas "approached three unknown black males," identified by Thomas only as "family members," and agreed to leave the van "in the parking lot, with the keys in it" for the men to "take . . . and load something in" it. (Doc. 10, Trial Tr. 110). Petitioner further

stated that "[a]fter a couple of hours, the van reappeared in the parking lot, at which time [he] and

Mr. Thomas got in the van and started northbound, back towards Boston." (Doc. 10, Trial Tr.

111). Petitioner told Schweitzer that "he did not have any contact numbers, that he was just the

driver;" nor did he mention visiting or staying overnight with friends in Cincinnati. (Doc. 10, Trial

Tr. 113).

After the State rested, petitioner took the stand to testify in his own defense. He stated that

he agreed to travel with Thomas from Boston to Cincinnati and back to Boston when Thomas

called him requesting help with the drive because he "was having problems with some chefs" and

needed to travel to Ohio to "pick up his brother-in-law and another chef for his restaurant." (Doc.

10, Trial Tr. 159). Petitioner testified that he agreed to help with the drive on the condition that

they return to Boston the following day as he had his own restaurant business to run. (Doc. 10,

Trial Tr. 159-60). On cross-examination, petitioner admitted that he never told the police that he

and Thomas had driven to Cincinnati to "pick up a chef and somebody else," and that "today is the

first time that [he] told the chef story." (Doc. 10, Trial Tr. 178-79). In addition, the prosecutor

elicited further testimony from petitioner to point out other inconsistencies between his trial

testimony and statements he made to police officers when he was first stopped and then

subsequently interviewed after his arrest. (*See* Doc. 10, Trial Tr. 179-90).

Contrary to petitioner's contention, the prosecutor's remarks in closing argument attacking

the credibility of petitioner's trial testimony, or "chef story," as a "recent fabrication" was based on

evidence presented at trial. As petitioner has argued, it is improper for the prosecutor to express a

personal opinion about the defendant's guilt or the credibility of trial witnesses, "because such

personal assurances of guilt or vouching for the veracity of witnesses by the state's representative

exceeds the legitimate advocate's role by improperly inviting the jurors to convict the defendant on

a basis other than a neutral independent assessment of the record proof." *West v. Bell,* 550 F.3d

542, 565 (6th Cir. 2008) (quoting *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999)), *cert.*

*denied*, 130 S.Ct. 1687 (2010); *see also Young*, 470 U.S. at 17. However, "this does not mean that

the prosecution cannot attack the defendant's credibility or even assert that the defendant is lying."

*West*, 550 F.3d at 565. The prosecutor is permitted to state in closing argument that a defendant is

lying "when emphasizing discrepancies between the evidence and the defendant's testimony," as

long as the prosecutor's comments "reflect reasonable inferences from the evidence adduced at

trial." *Id.* at 565-66 (quoting *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999)).

    In any event, even assuming that the prosecutor's remarks about the unbelievability,

"improbability, lies, . . . exaggeration, and weirdness" of petitioner's trial testimony crossed the

line and qualified as an expression of "personal opinion," instead of comments reflecting a

reasonable inference from the record evidence, the undersigned finds that it is unlikely that the jury

was inflamed or otherwise misled by those comments. Before the jurors retired to deliberate, the

court instructed them that petitioner "must be acquitted unless the State produces *evidence* which

convinces you beyond a reasonable doubt of every element of the offenses charged in the

complaint." (Doc. 10, Trial Tr. 228) (emphasis added). The court defined "evidence" as "all the

testimony that was received from witnesses, as well as the exhibits that have been admitted during

trial, any facts agreed to by the attorneys, and any facts which the Court requires you to accept as

true." (Doc. 10, Trial Tr. 228-29). The court further emphasized: "Now the evidence does not

include the indictment, the opening statements or closing arguments of the attorneys. The opening

statements and closing arguments are important, they are designed to assist you, but they're not

evidence." (Doc. 10, Trial Tr. 230). Given the court's explicit instructions, and the vague and fleeting nature of the comments, petitioner's trial counsel neither acted unreasonably nor undermined the reliability of the trial result by failing to lodge an objection to any remarks that may have qualified as expressions of "personal opinion" by the prosecutor.

Moreover, contrary to petitioner's contention, the prosecutor's challenged statements did not amount to an impermissible comment on petitioner's pretrial silence. In *Doyle v. Ohio,* 426 U.S. 610, 618-19 (1976), the Supreme Court held that a defendant's post-arrest, post-*Miranda* silence cannot be used to impeach the defendant's trial testimony. The Court reasoned that because *Miranda* warnings contain an implied assurance that "silence will carry no penalty, . . . it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* at 618.

However, in this case, to the extent that the prosecutor's remarks were directed at statements that petitioner made in his post-arrest, post-*Miranda* police interview, "*Doyle* does not apply to [bar] cross-examination that merely inquires into prior inconsistent statements" voluntarily made by the defendant after receiving *Miranda* warnings. *See Anderson v. Charles,* 447 U.S. 404, 408 (1980) (per curiam); *see also Franklin v. Bradshaw,* 545 F.3d 409, 415 (6th Cir. 2008); *United States v. Childs,* 539 F.3d 552, 562-63 (6th Cir. 2008); *Pillette v. Berghuis,* 408 F. App'x 873, 880-81 (6th Cir. 2010), *petition for cert. filed,* __ U.S.L.W. __ (U.S. Mar. 18, 2011) (No. 10-9600). In addition, to the extent the prosecutor's comments referred to petitioner's silence (or statements made to Detective Lewis) before he was given *Miranda* warnings, *Doyle* does not apply to preclude use of petitioner's pre-*Miranda* silence/statements to impeach his credibility as a witness. *See Hall v. Vasbinder,* 563 F.3d 222, 232 (6th Cir. 2009) (citing *Portuondo v. Agard,* 529

41

U.S. 61, 69 (2000)); *see also Fletcher v. Weir,* 455 U.S. 603, 605-07 (1982) (per curiam)

(involving post-arrest, pre-*Miranda* silence); *Jenkins v. Anderson,* 447 U.S. 231, 238-40 (1980)

(involving pre-arrest, pre-*Miranda* silence). As the Supreme Court stated in *Weir,* 455 U.S. at 607:

> In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to . . . silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which . . . silence may be deemed to impeach a criminal defendant's own testimony.

Finally, it was reasonable for the Ohio Court of Appeals to conclude that petitioner's trial

counsel was not ineffective in failing to object to the prosecutor's remarks concerning the possible

financial motive for petitioner's involvement in the charged drug possession and trafficking

offenses.

Evidence was introduced at trial that approximately 313 pounds of marijuana were found in

the minivan. (Doc. 10, Trial Tr. 76-77, 130). Moreover, as discussed earlier in addressing the

claim alleged in Ground Two, *see supra* pp. 14-16, DEA agent Raymond Dratt was allowed to

testify at trial about drug couriers, including whether they typically receive compensation for their

services in transporting drugs for distribution. (*See* Doc. 10, Trial Tr. 125-30). At one point, Dratt

stated that in a marijuana case, a courier's "usual compensation is approximately $100 a pound;"

Dratt continued: "In this particular case, 313 pounds of marijuana, if they are paid $100 per pound,

it's approximately $31,300 that, ultimately, Mr. Graham and Mr. Thomas were probably going to

split." (Doc. 10, Trial Tr. 128). Defense counsel immediately objected to that testimony and

moved that it be stricken as "total speculation;" the trial court sustained the objection and ordered

that the testimony be stricken. (Doc. 10, Trial Tr. 128). The prosecutor next asked Dratt whether

couriers are generally paid "up front or after completion of their mission." (Doc. 10, Trial Tr.

128). However, when defense counsel objected to that question as "all speculation," the trial court overruled the objection and permitted Dratt to answer that "[c]ouriers are typically given a small amount of money to cover their expenses during the trip" and "when the product is ultimately delivered, that's when they are compensated for their time and effort." (Doc. 10, Trial Tr. 128-29).

In addressing the prosecutorial misconduct claim on direct appeal, the Ohio Court of Appeals found that "the trial court sustained Graham's objection specific to Dratt's speculation that Thomas and Graham were going to split the courier fee, not that Dratt's information and knowledge regarding the typical courier fee and payment process were based on speculation." (Doc. 12, Ex. 17, pp. 13-14). In the absence of clear and convincing evidence to the contrary, the state appellate court's factual finding is presumed correct under 28 U.S.C. § 2254(e)(1). *See supra* p. 2 n.1. Therefore, the prosecutor's remarks suggesting a compensation amount of "over $30,000" for transporting the marijuana was based on evidence adduced at trial. Although there does not appear to be an evidentiary basis for the prosecutor's additional comment that petitioner was suffering "financial difficulties" with a "struggling fish market/day care business," it is highly unlikely that the one passing remark had any effect or influence on the jury in determining the verdict, particularly given that, as the prosecutor pointed out, "motive" is not an element of the charged offenses and thus was "not an issue" to be decided by the jury.

Accordingly, in sum, the undersigned concludes that this is not the case where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *See Harrington,* 131 S.Ct. at 786. The state courts' adjudication of both petitioner's ineffective assistance of trial counsel claim and his underlying prosecutorial misconduct claim is neither contrary to nor involves an unreasonable application of the relevant

Supreme Court precedents applicable to those claims of constitutional error.

## 2. Admission Of The Forensic Laboratory Report.

Petitioner also has argued that his trial counsel was ineffective for failing to object to the

admission of the forensic laboratory report because the lab analyst who prepared the report was not

called as a State witness and, therefore, could not be confronted by petitioner. (Doc. 1,

"Memorandum In Support of Jurisdiction," p. 42). The Ohio Court of Appeals, which was the only

state court to address the claim, overruled the assignment of error, reasoning in relevant part as

follows:

> "[T]he decision whether to cross-examine a particular witness is a tactical decision
> ultimately controlled by a defendant's trial counsel." . . . During the trial, the jury
> heard evidence that officers seized over 300 pounds of marijuana from the van
> Graham was driving. The lab report confirmed Lewis' on-site determination that
> the substance was marijuana and that each bundle weighed over 20,000 grams. It is
> understandable that Graham's counsel would not want to question the lab technician
> regarding the large quantity of marijuana found in the van after the jury had already
> heard Lewis' damaging testimony.
>
> Because counsel's decision to not cross-examine the lab technician was part of his
> trial strategy, Graham has failed to establish that counsel's decision to not cross-
> examine the lab technician was deficient or prejudicial. . . .

(Doc. 10, Ex. 17, pp. 20-21) (state case citations omitted).

The Ohio Court of Appeals' adjudication of petitioner's claim is neither contrary to nor

involves an unreasonable application of the *Strickland* standard and does not implicate

Confrontation Clause concerns. *Cf. Bailey v. Pitcher*, 86 F. App'x 110, 114 (6th Cir. 2004) (and

cases cited therein) (counsel's "tactical decision" not to cross-examine witnesses does not offend

the Confrontation Clause). Petitioner has not cited or presented any evidence to suggest that his

counsel acted unreasonably or prejudicially affected the trial's outcome by failing to demand the

appearance of the lab analyst for cross-examination purposes when the report was admitted into

44

evidence. Based on the present record, petitioner's trial counsel reasonably could have concluded

that the analyst's testimony would have been of no value to the defense and, in fact, may have

buttressed the State's case. In the absence of any evidence in the record even remotely indicating

that cross-examination of the analyst would have undermined the credibility or veracity of the

information contained in the forensic laboratory report, petitioner is not entitled to relief based on

either his ineffective assistance of counsel claim or the underlying defaulted claim of a

Confrontation Clause violation. *Cf. Jackson v. Brigano*, No. 94-3409, 1995 WL 302258 (6th Cir.

May 17, 1995) (holding that petitioner's appellate counsel "was not shown to have been

ineffective" for failing to raise a Confrontation Clause claim where the petitioner "only asserted a

vague denial of th[e] right [to cross-examine the witnesses against him] without arguing how he

would have attacked the reliability of the witnesses," and where "the inability to cross-examine

was at least partially a result of a tactical decision by defense counsel").

### 3. Conclusion.

In sum, the undersigned concludes that petitioner is not entitled to habeas relief based on

the prosecutorial misconduct and Confrontation Clause claims alleged in Grounds Four and Five of

the petition, which he procedurally defaulted in the state courts. In addition, petitioner is not

entitled to habeas relief based on the "actual innocence" and ineffective assistance of trial counsel

claims alleged in Grounds Seven and Nine of the petition, either as independent grounds for relief

or for the purpose of excusing his procedural defaults in the state courts. Therefore, Grounds Four,

Five, Seven and Nine should be denied with prejudice.

### F. Petitioner Is Not Entitled To Relief Based On His Claim In Ground Six Challenging The Sufficiency Of Evidence Supporting His Drug Possession And Trafficking Convictions

In Ground Six of the petition, petitioner claims that the evidence is insufficient to support

**45**

his convictions for marijuana possession and trafficking, which required proof beyond a reasonable doubt that he "knowingly" engaged in those offenses. (Doc. 1, "Memorandum In Support Of Petition," pp. 38-39). The due process claim was raised on appeal to both the Ohio Court of Appeals and Ohio Supreme Court and is subject to review on the merits.

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the constitutional issue presented on appeal. Citing state case-law, the court overruled the assignment of error together with a state-law claim that the jury's verdicts were against the manifest weight of the evidence. (Doc. 10, Ex. 17, pp. 14-16). In rejecting the due process claim, the court made findings of fact, which are presumed correct under 28 U.S.C. § 2254(e)(1), *see supra* p. 2 n.1, and reasoned in pertinent part as follows:

> When reviewing the sufficiency of evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. When addressing sufficiency, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
>
> ***
>
> "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency."
>
> Graham was convicted of violating R.C. 2925.11(A), which states that "no person shall knowingly obtain, possess, or use a controlled substance." Graham was also convicted of trafficking in marijuana in violation of R.C. 2925.03(A)(2), which states that no person shall "prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
>
> The jury heard the following evidence: Graham was stopped while driving on I-71, a major interstate often used as a drug courier route in a van that contained 313

pounds of marijuana. The marijuana was packed in six double-wrapped bundles, each weighing over 20,000 grams, and one of the bundles was located within an arm's distance behind Graham's driver-side seat. The marijuana was valued at over $400,000. The jury also heard testimony from Officer Lewis and the DEA agents regarding Graham's changing story and explanation for the one-day trip to Cincinnati.

Based on this evidence, we cannot say that Graham's convictions were against the manifest weight of the evidence. Instead, after reviewing the entire record and weighing the evidence and all reasonable inferences, as well as the credibility of the witnesses, the jury neither clearly lost its way nor created a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. Having found that Graham's convictions were not against the manifest weight of the evidence, it follows that the evidence was sufficient to support the convictions. . . .

(Doc. 10, Ex. 17, pp. 14-16) (state case citations omitted).

In the instant case, although the Ohio Court of Appeals cited only state cases, it correctly identified the clearly-established standard of review enunciated by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307 (1979), for addressing sufficiency-of-evidence claims. The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). As the state appellate court recognized, when a petitioner raises a sufficiency-of-evidence claim in a petition for a writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

The State is not required under the Due Process Clause to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.; see also Walker v. Engle,* 703 F.2d 959,

47

969-70 (6th Cir. 1983).  It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319.  Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the jury which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)), *cert. denied,* 130 S.Ct. 1134 (2010).  Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Id.* at 796-97 (and Sixth Circuit cases cited therein).

Petitioner was convicted in this case of knowingly possessing marijuana in an amount equal or exceeding 20,000 grams in violation of Ohio Rev. Code § 2925.11(A), and of knowingly transporting a quantity of marijuana when he knew or had reasonable cause to believe that the controlled substance was intended for sale or resale in violation of Ohio Rev. Code § 2925.03(A)(2).  (*See* Doc. 10, Ex. 1).  As the Ohio Court of Appeals reasonably found, the State presented sufficient evidence to establish petitioner's guilt on each charge.

Petitioner does not dispute that over 300 pounds of marijuana, packaged for distribution in six bundles weighing over 20,000 grams per bundle, were discovered in the van he was driving. (*See* Doc. 10, Trial Tr. 60, 71-72, 76-77, 130).  He contends only that the State failed to establish beyond a reasonable doubt that he knowingly engaged in the possession and trafficking of the

48

marijuana found in the van. (Doc. 1, "Memorandum In Support Of Petition," pp. 38-39).

At trial, petitioner testified that he thought he and Thomas were driving to Cincinnati for the purpose of picking up Thomas's brother-in-law and another chef to help out in Thomas's Boston-area restaurant; that he was unaware marijuana had been loaded in the van in Cincinnati; and essentially that Thomas acted alone in committing the offenses. (Doc. 10, Trial Tr. 159-60, 164-73). However, contrary to petitioner contention, a rational juror could have inferred from all the evidence presented at trial that petitioner actively participated with Thomas in committing the offenses and, more specifically, had to have been aware of the large quantity of marijuana in the van, including one bundle located directly behind petitioner's seat, concealed under blankets and further shielded from detection by way of an air freshener hanging in the rear of the van. Detective Lewis testified about petitioner's suspect driving behavior, as well as his nervousness and vague answers to Lewis's questions regarding the reason for his one-day road-trip to Cincinnati when stopped by Lewis for a traffic violation. (Doc. 10, Trial Tr. 38-42, 49-50). Moreover, Detective Schweitzer testified about petitioner's police interview, wherein petitioner attempted to explain how the marijuana ended up in the van without his knowledge; petitioner's account in the interview of three unknown men taking the van from a Dunkin' Donuts parking lot and returning it a few hours later loaded with bundles that petitioner failed to realize contained marijuana, not only strains credulity in and of itself, but also as the Ohio Court of Appeals pointed out, reflects "petitioner's changing story and explanation for the one-day trip to Cincinnati." (Doc. 10, Ex. 17, p. 16; Trial Tr. 110-13).

It was the jury's responsibility as the trier of fact to resolve the conflicts in testimony and to assess the credibility to be accorded petitioner's version of events. *See Jackson*, 443 U.S. at 319.

49

Accordingly, the undersigned concludes that, when viewed in the light most favorable to the prosecution, the evidence presented at trial was sufficient to support a reasonable inference that petitioner knowingly participated with Thomas in the charged marijuana possession and trafficking offenses.

In any event, the Ohio Court of Appeals' adjudication of the claim in Ground Six challenging the sufficiency of evidence withstands scrutiny under the deferential standard of review set forth in 28 U.S.C. § 2254(d) to be applied in this federal habeas case. *See supra* pp. 17-19. It is clear from the record that at most "fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *See Harrington,* 131 S.Ct. at 786. Because the state courts' adjudication of the issue thus is neither contrary to nor involves an unreasonable application of clearly-established federal law as determined by the Supreme Court in *Jackson,* petitioner is not entitled to relief based on such claim.

## G. Petitioner Is Not Entitled To Relief Based On The Non-Defaulted Claim In Ground Eight Challenging The Mandatory 8-Year Prison Sentence Imposed For His Trafficking Offense

In Ground Eight of the petition, petitioner alleges that the eight-year mandatory prison sentence that was imposed for his marijuana trafficking conviction "was unconstitutional as it removed all discretion from the province of the judiciary and violated separation of powers; constituted cruel and unusual punishment; and violated petitioner's Sixth Amendment right to a jury trial." (Doc. 1, "Memorandum In Support Of Petition," p. 40).

As an initial matter, petitioner only claimed on appeal in the state courts that the mandatory sentence, "leaving absolutely no discretion to the court" in imposing a sentence, violated the "doctrine of the separation of powers." (Doc. 10, Ex. 12, p. 18; Ex. 19, pp. 8-9). As respondent contends in the return of writ (Doc. 10, Brief, pp. 49-50), because petitioner did not assert any

arguments in the state courts based on the additional claims that his sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment and was imposed in violation of his Sixth Amendment right to a jury trial, it appears those issues are procedurally defaulted and thus barred from review in this federal habeas corpus proceeding.

Although ineffective assistance of counsel may constitute cause for a procedural default, *see, e.g., Murray,* 477 U.S. at 488, cause cannot be established if the ineffective assistance of counsel claim also was procedurally defaulted. *See Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Landrum v. Mitchell,* 625 F.3d 905, 934 (6th Cir. 2010), *petition for cert. filed,* __ U.S.L.W. __ (U.S. Apr. 4, 2011) (No. 10-9911). Here, petitioner raised an ineffective assistance of counsel claim on appeal in the state courts, but did not cite his attorney's failure to challenge his sentence on Sixth or Eighth Amendment grounds as examples of counsel's ineffectiveness. (See Doc. 10, Ex. 12, p. 19; Ex. 19, p. 9). Therefore, petitioner has waived the arguments asserted for the first time in the instant petition challenging his sentence on the bases that it was imposed in violation of his Sixth Amendment right to a jury trial and constitutes cruel and unusual punishment under the Eighth Amendment.

Petitioner's remaining claim that the mandatory sentence imposed in this case violates the separation-of-powers doctrine does not state a cognizable ground for federal habeas relief. *Cf. Butler v. Berghuis,* No. 1:02cv394, 2005 WL 2417655, at *9 (W.D. Mich. July 12, 2005) (Report & Recommendation), *adopted,* 2005 WL 2417667 (W.D. Mich. Sept. 30, 2005). In *Whalen v. United States*, 445 U.S. 684, 689 n.4 (1980), the Supreme Court noted that "the doctrine of separation of powers embodied in the Federal Constitution is not mandatory on the States." The Sixth Circuit also has held that the separation of powers between a state trial judge and other

branches of the state government "is a matter of state law," which is not subject to federal habeas review. *Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir. 2000) (citing *Pulley v. Harris,* 465 U.S. 37, 41 (1984)); *see also* 28 U.S.C. § 2254(a). Here, the Ohio Court of Appeals rejected petitioner's claim of state-law error and ruled that under controlling Ohio precedents, the state's mandatory sentencing legislation does not violate the separation-of-powers doctrine.  (Doc. 10, Ex. 17, p. 17). This Court lacks authority to reexamine the state-law issue, which was decided against petitioner on direct appeal. *See Wilson v. Corcoran,* _ U.S. _, 131 S.Ct. 13, 16 (2010) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").

In any event, on considering the same issue raised in the federal sentencing context, the Supreme Court has held that the legislature "has the power to define criminal punishments *without giving the courts any sentencing discretion.*" *Chapman v. United States,* 500 U.S. 453, 467 (1991) (emphasis added).  Therefore, as the Sixth Circuit recently observed in affirming a mandatory sentence for a federal crime, "the separation-of-powers doctrine provides no comfort for those seeking additional judicial discretion in the sentencing context." *United States v. Cecil,* 615 F.3d 678, 695-96 (6th Cir. 2010), *cert. denied,* 131 S.Ct. 1525 (2011).

Accordingly, in sum, petitioner is not entitled to relief based on the only claim alleged in Ground Eight challenging his sentence that he did not procedurally default in the state courts.

**H.  The Defaulted Claim In Ground Ten Based On "Cumulative Error" Lacks Merit**

In Ground Ten of the petition, petitioner contends that he is entitled to relief because the "cumulative effect" of the errors that occurred during his trial deprived him of his right to a fundamentally fair trial. (Doc. 1, "Memorandum In Support Of Petition," p. 42).  Although

petitioner asserted the claim as an assignment of error on appeal to the Ohio Court of Appeals, he did not raise it as a proposition of law on further appeal to the Ohio Supreme Court. (*See* Doc. 10, Ex. 19).  By thus failing to provide the state's highest court with an opportunity to address the claim of cumulative error, it appears that petitioner procedurally defaulted and has waived the ground for relief. *Cf. O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).

In any event, the claim lacks merit.  Neither the Supreme Court nor the Sixth Circuit has held that "distinct constitutional claims can be cumulated to grant habeas relief." *Millender v. Adams,* 376 F.3d 520, 529 (6th Cir. 2004) (quoting *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)); *see also Evans v. Mitchell,* 344 F. App'x 234, 244 (6th Cir. 2009), *cert. denied*, 130 S.Ct. 1106 (2010).  Even assuming such a claim may constitute a basis for relief, it is not available in a case such as this where "there are simply no errors to cumulate." *See Evans,* 344 F. App'x at 244 (quoting *Getsy v. Mitchell,* 495 F.3d 295, 317 (6th Cir. 2007) (en banc)); *see also Baze v. Parker,* 371 F.3d 310, 330 (6th Cir. 2004).

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is

correct in its procedural ruling.[6]  In addition, a certificate of appealability should not issue with respect to the claims addressed on the merits herein in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further."  *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

   3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation to deny all claims for relief with prejudice would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* with respect to those claims upon any showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 7/22/2011

      cbc

Karen L. Litkovitz
United States Magistrate Judge

---

[6]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in the defaulted grounds for relief.  *See Slack,* 529 U.S. at 484.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ANTHONY GRAHAM,                                Case No. 1:10-cv-616
    Petitioner

     vs                                           Barrett, J.
                                              Litkovitz, M.J.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
    Respondent

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the

recommended disposition, a party may serve and file specific written objections to the proposed

findings and recommendations.   This period may be extended further by the Court on timely

motion for an extension.  Such objections shall specify the portions of the Report objected to and

shall be accompanied by a memorandum of law in support of the objections.  If the Report and

Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).